UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 98-10176-GAO

UNITED STATES OF AMERICA,

v.

JEFFREY NORTH,
Defendant.

OPINION AND ORDER
July 24, 2009

O'TOOLE, D.J.

The petitioner, Jeffrey North, was convicted of possession of a machine gun in violation of 18 U.S.C. § 922(o), possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), conspiracy to possess marijuana with the intent to distribute in violation of 28 U.S.C. § 846, and "use and carry" of a weapon in relation to a drug conspiracy in violation of 18 U.S.C. § 924(c)(1). He was sentenced to 540 months imprisonment. On direct appeal, North's conviction and sentence were affirmed, United States v. North, 86 Fed. Appx. 427 (1st Cir. 2004), but the Supreme Court summarily granted his petition for certiorari, vacated the judgment, and remanded for reconsideration in light of United States v. Booker, 543 U.S. 220 (2005), North v. United States, 543 U.S. 1099 (2005). On remand, the First Circuit returned the case to this Court for resentencing. United States v. North, No. 01-1038 (1st Cir. Nov. 14, 2005). North was resentenced to 420 months imprisonment. On direct appeal of his resentencing, North's sentence was summarily affirmed. United States v. North, No. 06-1949 (1st Cir. Aug. 24, 2007). North has now moved under 28 U.S.C. § 2255 to vacate his sentence.

## I. Ground I: Expiration of the Grand Jury Term

In Ground I, North alleges that this Court lacked jurisdiction to try his case because the indictment was issued one month after the expiration of the grand jury term. Because North failed to raise this claim on direct appeal, it is procedurally defaulted. See Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002). A procedurally defaulted claim can be considered on a § 2255 motion only if the petitioner demonstrates cause for the default and prejudice flowing from it. See id. Despite a lengthy brief, North fails to explain why this claim was not raised previously. Without an articulated reason for the failure, North has not satisfied the first aspect of the "cause and prejudice" standard.

## II. Ground II: Conspiracy Count

In Ground II, North argues that the superseding indictment as to Count III (conspiracy to possess marijuana with intent to distribute) was constitutionally vague because it charged that he conspired with persons "known and unknown," but did not provide the co-conspirators' names; and that his conviction on Count IV ("use and carry" of a weapon in relation to a drug conspiracy) rested on an uncharged conspiracy involving Gianpaola Starita. Because both issues were decided on North's first direct appeal (and again raised and rejected in his second direct appeal), they cannot be relitigated by means of a § 2255 motion. See United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990).

## III. Ground III: Jencks Act and Brady Violations

In Ground III, North asserts that the government violated its obligations under the Jencks Act, 18 U.S.C. §3500, and Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose a report of a debriefing interview with Starita. Although North became aware of this alleged report

during his trial, he fails to explain why this claim was not raised on either direct appeal. This claim is therefore procedurally defaulted. See Berthoff, 308 F.3d at 127-28.

## IV.    Ground IV: Newly Discovered Evidence

In Ground IV, North asserts that newly discovered evidence raises reasonable doubt as to whether the .380 caliber machine gun and silencer charged in Counts I, II, and IV belonged to him. The purported new evidence consists of Stephen Dicenso's debriefing statements and subsequent testimony in United States v. DeCologero, No. 01-10373 (D. Mass.), and United States v. Capozzi, No. 01-10373 (D. Mass.).

The First Circuit has not decided whether "newly discovered evidence is a cognizable ground for obtaining a new trial in proceedings under § 2255." Moreno-Morales v. United States, 334 F.3d 140, 149 (1st Cir. 2003); Barrett v. United States, 965 F.2d 1184, 1194 (1st Cir. 1992). But the court has repeatedly emphasized that "[a]t a minimum, the petitioner would be required to meet the conventional criteria for obtaining a new trial on the ground of newly discovered evidence." Moreno-Morales, 334 F.3d at 149 (quoting Barrett, 965 F.2d at 1194). A defendant seeking a new trial on this basis must prove, *inter alia*, that "the emergence of the evidence will probably result in an acquittal upon retrial of the defendant." United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009). North cannot carry this "weighty burden." Id.

At trial, Thomas Regan testified that he, along with Dicenso and others, stole various firearms from North's apartment. (Trial Tr. 3-11, Mar. 3, 2000.) Dicenso's testimony in the DeCologero and Capozzi trials was not inconsistent with Regan's testimony at North's trial. In the first Capozzi trial, Dicenso testified that he and others had stolen various weapons from North's apartment, including a "machine gun" and "silencer." (Capozzi I Trial Tr. 29, Oct. 5, 2004.) In the second Capozzi trial, Dicenso testified that the weapons he and others had stolen

3

from North's apartment included a "machine gun with silencer." (Capozzi II Trial Tr. 17, Apr. 27, 2005.) He testified in the DeCologero trial that the weapons stolen from North's apartment included "the machine gun . . . and the silencer. . . ." (DeCologero Trial Tr. 13, Jan. 25, 2006.)

It is not entirely clear what North's current claim is, but it seems to relate to whether Dicenso's description of some of the weapons taken from North's apartment in his testimony in the DeCologero and Capozzi trials could have led the jury at his trial to have a reasonable doubt about whether North had possessed the machine gun and silencer referred to in Count IV of the superseding indictment. The theory seems to be that when the police searched the Medford apartment of Aislan Silva, where the weapons stolen from North were being stored by the DeCologero gang, the police recovered *three* MAC 11 automatic weapons; whereas Dicenso's later testimony was that he and others had stolen only *two* such weapons from North's apartment. According to North, Dicenso, in his subsequent testimony, stated that certain weapons found at Silva's apartment—a TEC-9, an AR-15, and a .357 Magnum—were not stolen from North's apartment. North suggests that if Dicenso's testimony had been offered, then reasonable doubt would exist as to whether the machine gun and silencer charged in the indictment belonged to him.

How the Dicenso evidence would have helped North is not apparent. Regan specifically identified the weapons relied on by the government. Dicenso's later testimony generally confirmed that weapons of the type identified by Regan were stolen from North's apartment. Dicenso's subsequent testimony thus confirms, rather than casts doubt on, Regan's trial testimony.

Moreover, apart from Regan's testimony, other evidence at trial connected North to the machine gun and silencer charged in Counts I, II, and IV. This evidence included Starita's

testimony that North had "show[n] us the MACs that he had" during a drug transaction. (Trial Tr. 74-75, Feb. 22, 2000.) According to Starita, "[T]here's different size MAC 10s, MAC 11s. [North] had the smaller size, you know, with the silencer that went on there that he was proud of [it] because he built it. . . . [A]nd he said he had modified it to be fully automatic." (Id. at 75.)[1]

It is unlikely in the extreme that Dicenso's later statements about the weapons that were taken during the break-in at North's apartment, if known to the jury, would have "result[ed] in an acquittal." See Del-Valle, 566 F.3d at 38. This ground has no merit.

## V.     Ground V: Sentencing Guidelines

In Ground V, North suggests that a sentence based on the Advisory Sentencing Guidelines violates the Ex Post Facto Clause of the U.S. Constitution. This argument is frivolous.

## VI.     Ground VI: Ineffective Assistance of Counsel—Conflict of Interest

In Ground VI, North argues that Attorney Oteri, his trial counsel, had an actual conflict of interest which violated his right to effective assistance of counsel. The alleged conflict of interest is based on the fact that one of Oteri's law partners represented Gele Kostovski, a co-defendant of Starita, in a separate criminal case. According to North, Oteri failed to sufficiently impeach Starita because doing so would implicate Kostovski's plea agreement.

The Sixth Amendment guarantees a defendant the right to conflict-free representation. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); United States v. Fahey, 769 F.2d 829, 835 (1st Cir. 1985). To establish a violation of the Sixth Amendment, a defendant, like North, "'who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected

---

[1] Additionally, North originally told government agents that a .380 caliber machine gun and silencer had been stolen from his apartment in October 1996. (Trial Tr. 163-64, Mar. 10, 2000.) He recanted this statement at trial, however. (Id. at 167.)

his lawyer's performance.'" United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994) (quoting Cuyler, 446 U.S. at 348); see also Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982) (emphasizing that a defendant cannot rely on "some attenuated hypothesis having little consequence to the adequacy of representation"). An actual conflict of interest exists when "(1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." Soldevila-Lopez, 17 F.3d at 486. A defendant who carries this burden "'need not demonstrate prejudice in order to obtain relief.'" Carey v. United States, 50 F.3d 1097, 1103 (1st Cir. 1995) (quoting Cuyler, 446 U.S. at 348).

North's "alternative defense strategy" is as follows: According to North, Starita testified that he and Kostovski earned $15,680,000 from marijuana sales. North suggests that this is a lie and, thus, his counsel should have impeached this testimony with Starita's grand jury testimony and Kostovski's drug ledgers, which both suggest a minimum of $23,000,000 was earned. Understanding why North believes a conflict of interest prevented this impeachment is confusing at best. His memorandum states:

> If Attorney Oteri had impeached Starita by introducing evidence that Starita and Kostovski had made a minimum of $23,000,000 (twenty three million dollars) in profits, not a total of $15,680,000 in sales, then it would have shown that Kostovski violated his plea agreement for refusal to meet the forfeiture demand of $15,600,000 (fifteen million, six hundred thousand dollars), which would have resulted in Kostovski receiving the 15 year minimum sentence indicated in Starita's plea agreement (App. 4), or possibly lost his plea agreement and received a sentence greater than the 15 years in the plea agreement.

(Br. in Supp. of Jeffrey North's Mot. Under 18 U.S.C. Section 2255 37.)

There is a fatal flaw in the premise for this argument. The trial transcript indicates that Starita never affirmatively testified that he and Kostovski earned $15,680,000. He testified only

that this was the amount attributed to him by the government. The following colloquy took place between Attorney Oteri and Starita:

> Q: . . . Sir, in the plea agreement on Page 9, Item D, . . . $15,680,000 in United States Currency and that such sum in aggregate was received by the defendants during the conspiracy alleged herein.
>     Now, is that the figure the figure you and [Kostovski] – the dollar figure of the value of the dope you and [Kostovski] sold?
>
> A: That's what the government says, yes.
>
> Q: You dispute the government?
>
> A: I don't know how they got the number.

(Trial Tr. 46, Feb. 24, 2000.)

Even if Starita testified falsely, the defense strategy envisioned by North is not "plausible." A "plausible" strategy implies that the strategy will "mak[e] a meaningful mark on the Government's case." See Maher v. United States, 2008 WL 1986037, at *5 (D. Me. May 7, 2008); see also Saccoccia v. United States, 69 F. Supp. 2d 297, 302 (D.R.I. 1999) ("The defendant need not prove that the alternative defense or tactic would have resulted in an acquittal but he must demonstrate that the prospect of success was sufficient to warrant pursing it."). Here, it is unlikely that impeachment on this minor and tangential issue would have impugned Starita's character so as to cause the jury to disbelieve his substantive testimony. The jury already knew of Starita's criminal history and plea agreement with the government and, thus, had ample evidence upon which to judge his credibility.

North has not proven that an "actual conflict of interest" existed. This ineffective assistance of counsel due to a conflict of interest claim must fail.

**VII.     Ground VII: Ineffective Assistance of Counsel—Impeachment**

In Ground VII, North asserts that his trial counsel rendered ineffective assistance by failing to impeach Starita's testimony that he and North first met in 1996 with either his grand jury testimony or information from David Ellis or Marc Petraglia, two other government witnesses. North believes proper impeachment would have proven that he and Starita did not meet until mid-1997 and, therefore, that it was impossible for Starita to have seen North with the machine gun and silencer charged in Counts I, II, and IV, as these items were seized in November 1996.

A.     Grand Jury Testimony

North's contention that trial counsel erred by failing to impeach Starita with his grand jury testimony can be summarily rejected. See United States v. Butt, 731 F.2d 75, 77 (1st Cir. 1984) ("Facially adequate § 2255 claims may be summarily denied when the record conclusively contradicts them."). Simply put, there is no contradiction between Starita's grand jury and trial testimony. Before the grand jury, Starita testified that "[t]he first time I did a deal with Jeff North . . . we met on Bennett Street at the house of my friend, Robert Wortel" and this deal took place in the "[e]arly to mid part of '97." (App. in Supp. of Jeffrey North's Br. & Mot. Under 18 U.S.C. Section 2255 68, 71.) Starita, *however*, corrected this testimony noting: "Actually, the first time we met him was before '97. We met him at the apartment we had—I think it was 1066 or 1082 Commonwealth Ave. We did a large deal with him there." (Id. at 72.) Starita testified consistently at trial when he stated that he first learned of North in "probably early '96." (Trial Tr. 59, Feb. 22, 2000.) More importantly, trial counsel unsuccessfully tried to impeach Starita with his original grand jury statement. (See Trial Tr. 12-14, 49-50, Feb. 24, 2000.)

B.  Ellis and Petraglia

North also maintains that his trial counsel rendered ineffective assistance by failing to use information from Ellis and Petraglia to impeach Starita's testimony concerning their first meeting in 1996.

To show ineffective assistance of counsel, the petitioner must demonstrate both that "counsel's representation was unreasonable under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" See id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Phoenix v. Matesanz, 233 F.3d 77, 82 n.2 (1st Cir. 2000) (explaining that strategic decision-making does not amount to ineffective assistance of counsel unless "the choice was so patently unreasonable that no competent attorney would have made it") (internal quotations omitted).

North cannot overcome this presumption. Here, neither Ellis's nor Petraglia's statements expressly undermine Starita's claim to have met North in 1996. For example, in a DEA report, Ellis states only that he gave North to Roger Leach,[2] as a paying customer, in 1997. Nothing in this report indicates whether Starita knew North beforehand. (See App. in Supp. of Jeffrey North's Br. & Mot. Under 18 U.S.C. Section 2255 46.) Petraglia, in a DEA report, indicated only that "[i]n July/August 1997, North advised [Petraglia] that he had found another source for

---

[2] Roger Leach was another drug dealer. Before the grand jury, Starita testified that Leach developed a serious heroin addiction and turned his business, including North, over to Starita and Kostovski at some time in 1997. (See App. in Supp. of Jeffrey North's Br. & Mot. Under 18 U.S.C. Section 2255 64, 66-67.)

marijuana in Boston." (Id. at 42.) The report does not indicate when North found this additional source. Trial counsels' decision to forego impeachment of Starita with statements not probative of his credibility was a reasonable, tactical decision. Therefore, North's ineffective assistance of counsel claim lacks merit.

**VIII.   Conclusion**

For the foregoing reasons, North's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (dkt. no. 230) is DENIED.

It is SO ORDERED.

  /s/ George A. O'Toole, Jr.
United States District Judge